IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-667-D

| | |
|---|---|
| MARIA A. CASTANEDA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>NASA HOSPITALITY, LLC, )<br>HOLIDAY INN (I-95 FAYETTEVILLE), )<br>ROBBIE MCBRIDE, and )<br>ANNETTE COGBURN, )<br>)<br>Defendants. ) | **ORDER** |

Maria A. Castaneda ("Castaneda" or "plaintiff") is a Hispanic woman who formerly worked for NASA Hospitality, LLC ("NASA") as a catering and events director at NASA's Holiday Inn I-95 location ("Holiday Inn I-95") in Fayetteville, North Carolina. On July 3, 2012, NASA discharged Castaneda for insubordination. On November 21, 2012, Castaneda filed suit against NASA, Holiday Inn I-95, and two of her former supervisors (collectively "defendants"), claiming that she was discharged because of her race and national origin, in violation of Title VII of the Civil Rights Act of 1964. See Compl. [D.E. 6]. On December 12, 2013, defendants moved for summary judgment [D.E. 28] and filed a memorandum in support [D.E. 29]. On January 8, 2014, Castaneda responded in opposition [D.E. 32]. On January 22, 2014, defendants replied [D.E. 34]. As explained below, the court grants defendants' motion for summary judgment.

I.

In July 2010, Castaneda began working at Holiday Inn I-95 as the salesperson in charge of catering and events. See Castaneda Dep. [D.E. 29-4] 34, 42. Castaneda worked on a small sales team that also included Cheri Clarke and Tahirah Ravenell, both African-American females.

Defendant Robbie McBride, the hotel's Director of Sales and a Caucasian female, supervised the team. Defendant Annette Cogburn, also a Caucasian female, was the hotel's General Manager. See id. 34, 41–42.

The sequence of events that led to Castaneda's discharge began in June 2012, when McBride instructed Castaneda, Clarke, and Ravenell by email that if they wanted to discuss sensitive topics like "bonuses, vacations, time off, raises, etc.," they should do so with McBride privately, rather than in the presence of the other team members. [D.E. 29-2]. McBride was concerned that public discussion of such issues had created unnecessary tension among the team members. See id. Castaneda disregarded McBride's instructions, and in the sales team's weekly meeting on July 3, 2012, mentioned her desire to have a formal performance evaluation so that she could, potentially, receive a raise. See McBride Dep. [D.E. 29-3] 17, 25; Castaneda Dep. 76, 123. McBride, consistent with her prior instruction, asked Castaneda to discuss that issue with her later, privately. Castaneda became frustrated, and McBride ended the meeting. See McBride Dep. 17–18, 24; Castaneda Dep. 78.

Later that day, McBride, Castaneda, and others were in a second meeting. According to McBride, at that meeting Castaneda began talking about McBride as if she was not in the room, in a manner that McBride perceived to be "very disrespectful." McBride Dep. 20; see also Ravenell Dep. [D.E. 29-7] 9 (stating that Castaneda "corrected [McBride], and ... [McBride] didn't too much care for that"). Castaneda denies having been disrespectful towards McBride. Castaneda Aff. [D.E. 32-1] ¶¶ 22–25.[1]

---

[1] The court accepts those portions of Castaneda's affidavit that supplement her prior deposition testimony, but disregards the portions of her affidavit that contradict her prior testimony. See, e.g., Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 422 (4th Cir. 2014); In re Family Dollar FLSA Litigation, 637 F.3d 508, 513 (4th Cir. 2011).

2

After that meeting, McBride went to Cogburn, who was her direct supervisor, and asked Cogburn how to handle the situation. Cogburn said to issue a "verbal warning" to Castaneda. McBride Dep. 20–21. McBride then had a third meeting with Castaneda in the hotel's human resources office in which she issued the warning and explained why she was doing so. See id. 21. According to McBride, she asked Castaneda to sign a form acknowledging that she had received the warning, but Castaneda refused to sign the form and walked out of the meeting. See id. 22, 28. The form is in the record [D.E. 29-6]. It describes why Castaneda received the warning, and is signed by McBride, Cogburn, and Tina Hopping, an employee in the hotel's human resources office. The line where Castaneda was to have signed is left blank, with an annotation initialed by Hopping stating that Castaneda refused to sign. See id. Castaneda denies that anyone asked her to sign the form. See Castaneda Dep. 92–93.

After Castaneda left the meeting in the human resources office, McBride went to the sales office to talk with her. McBride said she initially was not planning to discharge Castaneda, but communications between the two continued to break down, with Castaneda "getting hostile" and refusing to recognize McBride's authority. McBride Dep. 35; see Castaneda Dep. 119–21. At that point, after consulting with Cogburn, McBride decided to discharge Castaneda for insubordination. See McBride Dep. 35; [D.E. 29-1].

When asked why she thought her race or national origin motivated her discharge, Castaneda said only "I believe . . . that because I come from another country the perception is that people can abuse me because I am quiet, because I don't speak much, because my English is not perfect." Castaneda Dep. 80–81. Castaneda concedes, however, that neither McBride, Cogburn, nor anyone else at Holiday Inn I-95 ever said anything to her about her race, her national origin, or her accent. See id. 81–83.

3

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See, e.g., Fed. R. Civ. P. 56, Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). The moving party bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, summary judgment is appropriate unless the nonmoving party can affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Nor will a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . be []sufficient; there must be evidence on which the jury could reasonably find for [the nonmoving party]." Anderson, 477 U.S. at 252; see Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff may establish disparate treatment under Title VII in two ways. See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 426–29 (E.D.N.C. 2012). First, a plaintiff may demonstrate through direct evidence that illegal

4

discrimination motivated an employer's adverse employment action. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 n.4 (4th Cir. 2005); Evans, 80 F.3d at 959. Direct evidence is evidence from which no inference is required. To show illegal discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. See Hill, 354 F.3d at 286–91. Such direct evidence would include a decisionmaker's statement that she discharged a plaintiff due to her race or national origin. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151–52 (2000).

Second, if a plaintiff does not have any direct evidence of illegal discrimination, a plaintiff may proceed under the burden-shifting pretext framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination. To do so in a discharge case, a plaintiff must show that (1) she belongs to a protected class; (2) she was discharged; (3) at the time of her discharge, she was performing her job duties at a level that met her employer's legitimate expectations; and (4) after her discharge, her position remained open or was filled by a similarly qualified applicant outside the protected class. See, e.g., Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005); Hill, 354 F.3d at 285. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that it had a legitimate, non-discriminatory reason for the adverse employment action. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see also, e.g., Raytheon Co.

5

v. Hernandez, 540 U.S. 44, 49 n.3 (2003); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993); Burdine, 450 U.S. at 256; Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010); King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003). A plaintiff can demonstrate pretext by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); see McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 603–04 (E.D.N.C. 2006).

Initially, the court grants summary judgment to defendants Cogburn and McBride because Title VII applies to "employers," but not to individual supervisors such as Cogburn and McBride. See, e.g., Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180–81 (4th Cir. 1998); Stancil v. Rex Hosp., No. 5:12-CV-812-D, 2013 WL 3873228, at *1 (E.D.N.C. July 25, 2013) (unpublished); Aghimien v. N.C. Dep't of Transp., No. 5:08-CV-213-D, 2009 WL 413123, at *2 (E.D.N.C. Feb. 18, 2009) (unpublished).

As for defendants NASA and Holiday Inn I-95, Castaneda offers no direct evidence of discrimination, and proceeds under McDonnell Douglas. Under McDonnell Douglas, Castaneda first must establish a prima facie case of discrimination. Defendants concede that Castaneda belongs to a protected class, that she was discharged, and that her position was filled by Clarke, who is outside Castaneda's protected class. See Defs.' Mem. Supp. Summ. J. [D.E. 29] 7. Defendants argue, however, that at the time of her discharge, Castaneda was not performing her job duties at a level that met her employer's expectations. Specifically, defendants contend that they legitimately expected Castaneda to "comply with company policies, follow requests from supervisors, and work as part of a team toward providing guests with an exceptional experience at the hotel," and that in Castaneda's interactions with McBride, she failed to meet those legitimate expectations. Id. 8.

6

In response, Castaneda offers her own affidavit, in which she denies having been disrespectful or insubordinate, and cites the testimony of Clarke and Ravenell that Castaneda was a qualified employee who performed her job duties in a professional manner. Pl.'s Mem. Opp. Summ. J. [D.E. 32] 10–12; see Castaneda Aff. ¶¶ 49–51; Clarke Dep. [D.E. 29-5] 13; Ravenell Dep. 13–14. Castaneda also suggests that Clarke and Ravenell were insubordinate at times, but were not discharged. Pl.'s Mem. Opp. Summ. J. 8.

In considering whether a wrongful-discharge plaintiff was meeting her employer's legitimate expectations, "it is the perception of the [employer] which is relevant, not the self-assessment of the plaintiff." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000) (quotation omitted); see King, 328 F.3d at 149; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson, 427 F. Supp. 2d at 607. Thus, an employee's own, self-serving testimony about her job performance is insufficient to establish a genuine issue of material fact as to whether she was meeting her employer's legitimate expectations. See King, 328 F.3d at 149; Smith v. Martin, No. 5:10-CV-248, 2011 WL 3703255, at *5 (E.D.N.C. Aug. 23, 2011) (unpublished); O'Daniel v. United Hospice, No. 4:09-CV-72, 2010 WL 3835024, at *4 (E.D.N.C. Sept. 29, 2010) (unpublished); Lloyd v. New Hanover Reg'l Med. Ctr., No. 7:06-CV-130, 2009 WL 890470, at *9 (E.D.N.C. Mar. 31, 2009) (unpublished); McDougal-Wilson, 427 F. Supp. 2d at 611. Likewise, the testimony of an employee's coworkers about her job performance is insufficient to establish a genuine issue of material fact as to whether she was meeting her employer's legitimate expectations. See King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith, 2011 WL 3703255, at *5. An employer legitimately may expect that an employee will not be insubordinate. See, e.g., Spease v. Pub. Works Comm'n, 369 F. App'x 455, 455–56 (4th Cir. 2010) (per curiam) (unpublished); Jones v. Southcorr, L.L.C., 324 F. Supp. 2d 765, 781–82 (M.D.N.C. 2004).

7

Defendants have offered ample evidence that, at the time of Castaneda's discharge, she was not meeting their legitimate expectations that she would "comply with company policies, follow requests from supervisors, and work as part of a team toward providing guests with an exceptional experience at the hotel." Defs.' Mem. Supp. Summ. J. 8. Castaneda's testimony and her co-workers' testimony about Castaneda's job performance do not create a genuine issue of material fact. Furthermore, even if Clarke and Ravenell were subject to disciplinary action at times but retained their employment, that fact does not help Castaneda avoid summary judgment. Unlike Castaneda, Clarke and Ravenell accepted any warnings they received without challenging McBride's authority as their direct supervisor. See Castaneda Dep. 68–69; Clarke Dep. 15–17; cf. King, 328 F.3d at 148 n.2 (distinguishing the plaintiff from another employee who had engaged in similar behavior because that employee corrected his behavior, unlike the plaintiff). Castaneda has presented no evidence from which a rational factfinder could find that, at the time she was discharged, she was performing her job duties at a level that met defendants' legitimate expectations. Thus, Castaneda has failed to establish a prima facie case of employment discrimination.

Alternatively, even if Castaneda could establish a prima facie case of employment discrimination, her claim would fail because defendants have articulated a legitimate, non-discriminatory reason for discharging Castaneda—insubordination—and Castaneda has not offered evidence from which a rational factfinder could find that defendants' proferred reason was a pretext designed to mask unlawful discrimination. "A plaintiff can demonstrate pretext by showing that the alleged nondiscriminatory 'explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race-based] discrimination.'" Holley, 846 F. Supp. 2d at 428–29 (quoting Mereish, 359 F.3d at 336); see also, e.g., O'Daniel, 2010 WL 3835024, at *3–4. Castaneda has offered no such evidence. Indeed, she admitted that no one at Holiday Inn I-95

8

ever mentioned her race, national origin, or accent. Accordingly, her employment-discrimination claim fails, and the court grants summary judgment to defendants NASA and Holiday Inn I-95.

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 28]. The clerk shall close the case.

SO ORDERED. This 17 day of July 2014.

*[signature]*
JAMES C. DEVER III
Chief United States District Judge